Argued October 27, 1975, affirmed February 17, reconsideration denied
March 24, petition for review allowed June 15, 1976

STERLING, *Appellant,*
*v.*
CITY OF ALBANY et al, *Respondents.*
(No. 41-837, CA 4088)

545 P2d 1386

*Raymond J. Conboy,* Portland, argued the cause for appellant. With him on the briefs were Pozzi, Wilson & Atchison and Elden M. Rosenthal, Portland, and

Emmons, Kyle, Kropp & Kryger and C. S. Emmons, Albany.

*Edward Warren,* Portland, argued the cause for respondents. With him on the brief were Hershiser, Mitchell & Warren and William H. Mitchell, Portland.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

FORT, J.

## FORT, J.

This tragic case is a wrongful death action brought by decedent's personal representative against the City of Albany and two officers of the Albany Police Department. Plaintiff appeals after a jury verdict for defendants, asserting that the trial court erred in refusing to strike certain allegations set forth as affirmative defenses from defendants' Second Amended Answer. No other errors are assigned.

We summarize the facts from the viewpoint most favorable to defendants. Plaintiff's decedent was a co-owner of the Bull N'Bear Restaurant in Albany. In the two months that he and his partner had owned the restaurant it had been broken into twice, and twice police had found windows unlocked at night and had entered to investigate possible burglary. The police had left notes to the owners when they found no crime. Prior to their ownership it had also been broken into on other occasions.

Sometime after 1:30 a.m. on April 15, 1972, plaintiff's decedent had driven his El Camino from the apartment he shared with his co-owner to the restaurant. An Albany policeman, defendant Officer Hansen, while on routine patrol, arrived at the restaurant premises to make a security check at about 5 a.m. that same morning. He noticed that an El Camino in the parking lot had no condensation on the windows, indicating to him, when compared with another vehicle parked near it, that it had been driven recently. Upon inspecting the exterior of the building he found a window open fronting upon the second floor balcony next to the window through which burglars had previously entered. He observed that the dust on its sill was disturbed. He returned to his police car and radioed for a license check on the El Camino and for assistance. Defendant Officer Engel arrived a few minutes later and, without waiting for the license check report, the two entered the building, making some noise in the process. While checking through the unlighted build-

ing, Officer Hansen shone his flashlight into a second floor room and saw a figure there with a gun in hand. He ordered the person not to shoot and to drop the gun. Officer Hansen was unsure but believed he also identified himself as a police officer as the person fired. The person, however, fired at the officers, the bullet passing at about head level into the room where they were located. The police officers dropped to the floor and, as the person continued approaching them with gun in hand, returned the fire. One bullet fired by Officer Hansen struck plaintiff's decedent, killing him.

Plaintiff's pleading sounds in negligence, alleging in effect that plaintiff's decedent was killed by the defendants as a result of their negligence (a) in entering the restaurant without completing the ownership check on the El Camino, (b) without first notifying either of its owners, (c) without warning to occupants of the restaurant, (d) in entering the restaurant at all, (e) in entering it in a manner which made decedent fear for his safety, (f) in firing at decedent at all, and (g) in firing at decedent before identifying themselves as police officers. Each of these issues was submitted to the jury.

The answer in addition to containing a general denial alleged three affirmative defenses. In the first, defendants alleged that they had reasonable grounds to believe decedent was engaged in criminal activity in the restaurant and that defendants acted reasonably and in good faith in what they did. The second alleged the police had probable cause to believe a felony was being committed in the restaurant and that the subsequent shooting occurred in the reasonable exercise of self-defense. The third alleged contributory negligence on decedent's part (a) in failing to see the restaurant was properly locked, (b) in not advising defendants he was on the premises, and (c) in not identifying himself prior to firing at defendants. On appeal plaintiff objects to the first two affirmative defenses and to the

second and third allegations of contributory negligence.

A threshold question in determining whether these issues were properly before the jury is whether or not the police officers were trespassers at the time of their entry into the Bull N'Bear Restaurant. Their stated purpose in entering without notice or warrant was to investigate the possibility that a burglary or related crime was either then in process or had recently been committed.

No Oregon case has been called to our attention which determines the status of a police officer entering a business building without consent to determine whether a crime is being or has recently been committed. 2 Restatement (Second) of Torts 2d, § 345 (1965), says in part:

> "On the other hand firemen and policemen entering under authority of law, without any such element of business dealing, are commonly held by the courts to stand on the same footing as licensees. Occasionally they are called licensees; sometimes they are said to be sui generis, but on the same footing as licensees. One explanation for this lies in the fact that firemen and policemen are likely to enter at unforeseeable times, upon unusual parts of the premises, and under circumstances of emergency, where care in preparation for their visit cannot reasonably be expected; and they do not have the implied representation or assurance of such care which is the basis of the greater duty to an invitee."

In Annotation, 86 ALR2d 1205, 1223 (1962), the author states:

> "A number of courts have taken the position that, at least in the absence of statute or express invitation, a policeman who enters upon premises in the discharge of his duty has the status of a licensee."

In Oregon a municipal police officer is authorized to "prevent and punish trespass on real and personal property," ORS 221.916(12). It is elementary that it is his duty to preserve the peace and to arrest persons guilty of law violations, ORS 221.919. We adopt the forego-

ing rules and thus conclude that since the officers entered the restaurant in the performance of their duties they were not trespassers.

Another contention is that their entry into the restaurant was not, under the circumstances, a reasonable one.

■ Oregon Constitution, Art I, § 9, and U.S. Const. Amend. IV, in virtually identical language, assert the right of every person "to be secure in their persons, houses, papers, and effects" against unreasonable searches or seizures. A large portion of the numerous recent cases on these provisions deal with when a search is to be considered an unreasonable one and when it is not. The overwhelming majority of these cases has arisen in the context of a criminal prosecution, but the constitutional mandate also applies to civil cases in Oregon. *Smith v. McDuffee,* 72 Or 276, 142 P 558, 143 P 929, 1916D Am Ann Cas 947 (1914). That case was a civil action for damages for unlawful search of a house by an officer pursuant to a warrant which the court concluded was void for reasons not here relevant. In the course of the opinion the court said:

> "The dwelling of every person while he is in the lawful possession thereof is his castle, and it ought not to be subjected to an uninvited search except by a duly qualified officer, and then only in pursuance of a valid writ commanding it. Such searches are usually made without the consent of the occupant of a domicile, and the investigation being a proceeding *in invitum,* the statute authorizing it is to be strictly construed, and no presumptions of regularity are to be invoked in aid of the process under which a proper officer obeying its commands undertakes to justify." 72 Or at 284.

Both constitutions prohibit unreasonable searches. *State v. Douglas,* 260 Or 60, 67, 488 P2d 1366 (1971); *State v. Frazier,* 245 Or 4, 8, 418 P2d 841 (1966). We note that in a civil action the Oregon Supreme Court has held that evidence will not be suppressed even though it was seized in an unconstitutional search. In

*State Forester v. Umpqua River Nav.,* 258 Or 10, 478 P2d 631 (1970), *cert denied* 404 US 826 (1971), the court said:

> "In summary, we do not find that illegal searches and seizures outside the area of law enforcement officers investigating crimes occur frequently. In addition, we have not been shown, if such were the practice, that remedies other than exclusion of evidence would be inadequate to deter the continuance of such practice. On the other side of the ledger, we continue to regard a trial as a search for the truth and, therefore, competent evidence should never be excluded except for the most compelling reason. We hold that illegally seized evidence should only be excluded in a criminal or quasi-criminal proceeding and if obtained by law enforcement officers investigating criminal activity. The order of the trial court excluding the evidence was in error." 258 Or at 26.

Whether a search is a reasonable one is largely determined by its particular facts. *State v. Douglas,* supra, 260 Or at 62; *State v. Frazier,* supra; *State v. Keith,* 2 Or App 133, 465 P2d 724, Sup Ct *review denied* (1970). It is also clear that a search may not be made in the absence of probable cause. *Chimel v. California,* 395 US 752, 89 S Ct 2034, 23 L Ed 2d 685 (1969); *State v. Douglas,* supra; *State v. Keith,* supra. We think that it was a question of fact for the jury to determine whether the officers' entry into the restaurant was, under the claimed exigencies, a reasonable act, and whether or not it was done in good faith in the performance of their duties. In fact, these questions were put into issue by the plaintiff's allegation that defendants were negligent in entering the restaurant at all.

Certainly, too, it was a question of fact for the jury to consider and determine whether the officers had probable cause to believe, as they contended, that a felony was being committed in the building at the time they entered. That determination was a most important ancillary fact to the ultimate one of whether or not defendants acted reasonably and in good faith in entering the building, and thus were not trespassers.

[ 403 ]

■ The last portion of the second affirmative defense alleged that the officers fired in self-defense. Speaking of the right of self-defense, Prosser, Torts 108-09, § 19 (hornbook series, 4th ed 1971), states:

> "* * * The privilege extends to the use of all reasonable force to prevent any threatened harmful or offensive bodily contact, or any confinement, whether intended or negligent. Since it originated as a defense, the burden is upon the defendant to establish the facts creating the privilege.
>
> "*Apparent Necessity*
>
> "The privilege to act in self-defense arises, not only where there is real danger, but also where there is a reasonable belief that it exists. * * *"

Since the defendants had the burden of establishing that defense, it is clear that the second affirmative defense was properly alleged. The motion to remove it from the consideration of the jury was properly denied.

We turn now to the motion to strike from the answer and to remove from the consideration of the jury two of the allegations of contributory negligence by plaintiff (1) "in failing to advise defendants of his presence in the building when he knew or had reason to know that the officers would be patrolling the area," and (2) in "failing to identify himself to the officers prior to firing upon them."

■ We have already concluded that the police officers were at best licensees. The landowner is not required, in the absence of special circumstances, to give advance notice to a licensee of his presence on his own premises, even though that may be an unusual occurrence at the time in question.

■ Defendants call our attention to no case, and we are aware of none, which holds that, absent special circumstances, a business man has any legal duty to notify the police or anyone else when he is or plans to be upon his own premises at hours other than those when the business is normally open to the public, at least in the absence of any prior request that such

[ 404 ]

information be furnished to them. In their brief, defendants in effect concede this, but urge that here "special circumstances existed which would cause a reasonable man to believe that notice to the police of his presence was required in the exercise of ordinary care for his own safety."

They contend the two relatively recent burglaries, combined with the two further entries through an open second floor window by the police and the leaving by them of notes so advising the owners, were sufficient to place this burden on the plaintiff's decedent. The affirmative defense apparently predicates this duty on the owner's knowledge that "officers would be patrolling that area."

In the case at bar, however, the duty is asserted as a part of the claim of contributory negligence made against the decedent in his failure to exercise reasonable care for his own safety.

Mr. Handy, decedent's business partner and co-owner of the restaurant, testified as a witness for plaintiff on direct examination:

"Q   Now, prior to April 16, 1972, were you aware that police officers had been in your building at night?

"A   Yes.

"Q   How were you made aware of that?

"A   Well, there was a note left in the cash register that said something to the effect that 'We entered your building and secured it,' or something like that, and it was left in the cash register.

"Q   Did you and Mr. Sterling discuss that at all?

"A   Yes, we did.

"Q   Did you complain to anyone about that?

"A   No, not officially. We discussed it among ourselves and our employees and we thought it was irregular.

"Q   Why didn't you do anything about it?

"A   I guess it's because we were new in town and we were involved in opening this restaurant and getting it going, and then we were going to complain about it if it happened again, and this incident happened before—

"* * * * *

"Q  Do you recognize this pistol that the bailiff is holding?

"A  It's similar to the one that was in the restaurant. I mean, I couldn't say positively. It looks like the one.

"Q  Whose pistol was it?

"A  It was Maurice's [decedent's].

"Q  Where was it kept?

"A  Upstairs in the office in the lower left drawer.

"Q  Why was it kept there?

"A  Well, because we had been broken into twice and we had policemen in there at night and we didn't, you know, as far as we were concerned, they were uninvited, you know, that they were going in. We were just nervous, I guess. Not nervous really, but we didn't—I don't know—we didn't feel right about what was going on."

While that testimony is open to more than one inference, we think that from it, together with the other testimony, a jury might reasonably infer that decedent, at the time he returned to the restaurant and concealed himself with a gun in an upper room at a late and unusual hour near an open window, did not exercise due care for his own safety. This was because to his knowledge both burglars and police in the recent past had entered through an open second floor window. It was also at a time when both he and his partner apparently believed it was probable that the police, upon again observing an open window, would, as they had twice before, enter on this occasion through the open second floor window to determine if the restaurant had again been broken into. Under such circumstances we cannot say as a matter of law that a reasonably prudent person in decedent's position in the exercise of reasonable care for his own safety would not have notified the police of his presence upon the unlighted premises prior to the time the police entered. We think this presented a question of fact for the jury and thus no error was committed in the failure to remove that allegation of contributory negligence from the affirmative defense.

█  Finally, we turn to the last assignment of error,

which is that the allegation plaintiff's decedent was negligent in not identifying himself to the officers before firing upon them was erroneously allowed to remain in the pleadings. We think the question of whether a reasonable man would, under the circumstances then and there existing, have identified himself in some manner to the police officers before himself initiating the interchange of gunfire was a question of fact for and was properly submitted to the jury. ORS 161.209,[1] 161,215(2),[2] and 161.219(1,3).[3]

Affirmed.

---

[1] ORS 161.209:

"Except as provided in ORS 161.215 and 161.219, a person is justified in using physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force, and he may use a degree of force which he reasonably believes to be necessary for the purpose."

[2] ORS 161.215(2):

"Notwithstanding ORS 161.209, a person is not justified in using physical force upon another person if:

"* * * * *

"(2) He is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to the other person his intent to do so, but the latter nevertheless continues or threatens to continue the use of unlawful physical force * * *."

[3] ORS 161.219(1,3):

"Notwithstanding the provisions of ORS 161.209, a person is not justified in using deadly physical force upon another person unless he reasonably believes that the other person is:

"(1) Committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person; or

"* * * * *

"(3) Using or about to use unlawful deadly physical force against a person."