STATE of Iowa, Appellee,

v.

Terry Boyd VAN REES, Appellant.

No. 58503.

Supreme Court of Iowa.

Oct. 20, 1976.

Irish, Skinner & Wieslander, Altoona, for appellant.

Richard C. Turner, Atty. Gen., Thomas Mann, Jr., Asst. Atty. Gen., and Kenneth Whitehead, County Atty., for appellee.

Heard before MOORE, C. J., and Le-GRAND, REES, UHLENHOPP and REYNOLDSON, JJ.

LeGRAND, Justice.

This case arose out of bizarre happenings on April 15, 1974. As a result, Terry Boyd Van Rees, the defendant, was charged with violating § 742.1, The Code, 1973, which makes it an indictable misdemeanor to knowingly and willfully resist an officer in the discharge of his duties. Following a jury trial, he was found guilty and was subsequently sentenced to a term of one year in jail. Sentence was suspended, and defendant was placed on probation for two years. He has appealed and we reverse.

The events leading up to defendant's conviction began when he drove his Thunderbird automobile into a parked truck in the city of Reasnor. He departed the scene and drove to his home. Several neighbors reported this matter to the sheriff's office. Harold Smith, a deputy sheriff, was dispatched to investigate.

When Deputy Smith arrived at defendant's home, defendant was standing in his yard talking with Sam Gray, who later was an important witness to this case. The deputy walked into defendant's yard and attempted to engage him in conversation concerning the hit-and-run accident, after first identifying himself and stating his purpose. Almost immediately defendant and the deputy engaged in a dispute which continued for some time with ever increasing rancor. Defendant ordered Smith from his property. He refused to answer any questions except to deny having been in an accident. There is testimony—disputed— that defendant, a very large man, repeatedly threatened to kill the deputy if he did not leave; that he attempted to choke him; and that on several occasions defendant seemed to be "going for" Smith.

This verbal altercation spilled over from defendant's yard to an area designated in the evidence as an alley or alleyway, where Smith had parked his squad car. Smith went to his car to radio for help. Defendant followed closely behind. While Smith was entering his car, defendant slammed the car door against his leg. There is evidence this was done violently and that it severely bruised Smith's leg. There is other evidence that the incident was of no consequence.

What began as a routine investigation of a minor hit-and-run accident terminated when Deputy Smith shot defendant in the leg to avoid, according to him, serious physical assault. Eventually defendant's leg was amputated. At the time of trial, there was pending against the city and the deputy a personal injury suit brought by defend-

ant for two million dollars. This assumes some significance in our later discussion.

Defendant raises the following issues:

1. Failure of the State, without good cause, to file an information within 30 days after he was held to answer, as required by § 795.1, The Code;

2. Error in overruling defendant's demurrer to the information;

3. Error in trial court's refusal to give requested instructions;

4. Error in limiting cross-examination of the State's witnesses;

5. Error in the admission of evidence; and

6. Error in overruling defendant's motion for dismissal because the State withheld exculpatory evidence.

## I. *FAILURE TO COMPLY WITH § 795.1*

■ A preliminary information was filed on April 16, 1974, charging defendant with a violation of § 742.1, The Code. On April 24, 1974, defendant, through his attorney, waived preliminary hearing. The matter was bound over to the grand jury. On May 10, 1974, while defendant was in the hospital, he called the county attorney concerning the charges against him. He admits he requested that no charge be filed until he was out of the hospital. Following this conversation, the county attorney withheld filing an information until June 14, 1974, fifty-one days after defendant was held to answer.

Now defendant says he is entitled to a dismissal because the State failed to file the charge within 30 days as required by § 795.-1, The Code. In *State v. Gorham*, 206 N.W.2d 908, 913 (Iowa 1973), we set new standards for the State's compliance with § 795.2, the speedy trial statute. In *State v. Morningstar*, 207 N.W.2d 772, 775 (Iowa 1973), we said the same principles are applicable to § 795.1 cases.

Since *Gorham* and *Morningstar* we have had occasion to consider what circumstances toll the running of these statutes. We have recognized delay attributable to defendant as good cause. *State v. Fryer*, 243 N.W.2d 1, 5 (Iowa 1976); *State v. Truax*, 232 N.W.2d 861, 863 (Iowa 1975); *State v. Montgomery*, 232 N.W.2d 525, 527 (Iowa 1975) and citations.

We agree with the trial court that good cause for the delay was shown. Defendant was hospitalized with a serious injury. He requested a delay in the criminal proceedings to be brought against him. Failure to meet the terms of § 795.1 was at his request and for his convenience. We hold this constitutes delay attributable to defendant. He is not entitled to relief under § 795.1.

## II. *FAILURE TO ALLEGE PLACE OF CRIME*

■ Defendant demurred to the information, claiming it was fatally defective because it failed to specifically allege the crime was committed on defendant's property. He relies on § 773.10, The Code, which provides:

"An indictment need contain no allegation of the place of the commission of the offense, except in those cases in which the place is a material ingredient of the offense."

■ Defendant's contention is without merit. A violation of § 742.1 may occur on a defendant's own property as well as on neutral ground. This is a circumstance which may well affect the evidence necessary to convict in certain cases; but under the present record an allegation that the crime was committed on defendant's property was not "a material ingredient of the offense."

### III. *REFUSAL TO GIVE REQUESTED INSTRUCTIONS*

■ This issue raises the recurring theme of defendant's trial—that Deputy Smith was illegally on his property and that he was entitled to resist him by all necessary means, including force.

Defendant objects to the court's failure to give three requested instructions. All of them sought to establish that Deputy Smith could not have legally entered defendant's premises without a warrant except with defendant's consent. As it is admitted there was no warrant, defendant wanted the jury instructed he could not be convicted unless consent to the entry was shown beyond a reasonable doubt.

■■ The obligation of the court to instruct is well settled. Even without a request, the court must instruct on all material issues so that the jury understands the matters which they are to decide. *State v. Ritchison,* 223 N.W.2d 207, 211 (Iowa 1974); *Gibbs v. Wilmeth,* 261 Iowa 1015, 1022, 157 N.W.2d 93, 97–98 (1968). Instructions must state applicable legal principles in the light of the evidence. *Hagenson v. United Telephone Company of Iowa,* 209 N.W.2d 76, 82–83 (Iowa 1973) and citations.

■ We cannot agree that an officer is acting illegally when he enters upon a person's property to question him in investigating a complaint that a crime has been committed.

Ordinarily an officer of the law who goes upon private property under such circumstances is not a trespasser. *United States v. Barnett,* 492 F.2d 790, 791 (5th Cir. 1974); *United States v. Knight,* 451 F.2d 275, 278 (5th Cir. 1971); *mandamus denied* 405 U.S. 965, 92 S.Ct. 1171, 31 L.Ed.2d 240 (1972); *State v. Dalebout,* 480 P.2d 451, 452 (Or. App.1971) (based on an Oregon statute); . *Gardner v. State,* 6 Md.App. 483, 251 A.2d 901, 907 (Md. Ct. of Special App. 1969);

*State v. Lukus,* 149 Mont. 45, 423 P.2d 49, 53–54 (1967); *Heinze v. Murphy,* 180 Md. 423, 24 A.2d 917, 920 (Md.1942).

The rule is stated this way in 75 Am. Jur.2d *Trespass* § 43 at 38 (1974):

> "Conduct otherwise a trespass is often justifiable by reason of authority vested in the person who does the act, as, for example, an officer of the law acting in the performance of his duty."

*See also* 1 Harper and James, The Law of Torts (1956), § 1.20, page 56.

In the present case, Deputy Smith had been directed to investigate the hit-and-run accident. Leaving the scene of an accident is a misdemeanor. § 321.264 and § 321.482, The Code. Law officers, including deputy sheriffs, are obligated under § 748.4 to investigate crimes. We hold Smith was entitled to enter defendant's premises to carry out this duty. For this limited purpose he was not a trespasser and did not require defendant's consent.

What we have said does not, of course, permit an officer to enter one's home or to conduct a search or make a seizure without a warrant or other authority.

We find the trial court's instructions were adequate and properly set out the principles involved under the facts shown by the evidence. There was no error in refusing defendant's requested instructions.

### IV. *ERROR IN ADMITTING EVIDENCE*

■ Another recurring objection was defendant's insistence the area adjacent to his property where Deputy Smith allegedly parked his car and where some of this altercation took place was not a public alley, as described by some of the witnesses. We have already said the officer was not illegally on defendant's property. Whether this narrow strip was a public alley or was private property would not change the re-

sult. Furthermore, we believe there was sufficient evidence to show it was a public alley. We find no error in the admission of this testimony.

■ Defendant also strenuously objected to the testimony of a number of witnesses concerning the hit-and-run accident and the damage done to the vehicle which was struck.

Defendant says this testimony was hearsay; that it related to the commission of another crime and was therefore inadmissible; and that it was irrelevant to any issue in this case.

The testimony of the deputy sheriff who received the incoming call, and, as a result, dispatched Officer Smith to the scene, was clearly admissible as accounting for Smith's presence at defendant's home. It was not introduced to establish the truth of the hit-and-run accident nor of defendant's involvement therein.

This is also true of the testimony concerning telephone calls reporting the hit-and-run accident. This evidence simply explained the reason for Smith's presence and set the stage for his attempted investigation. It was not introduced to establish the truth of any of the facts stated in the conversations. *See State v. Leonard,* 243 N.W.2d 887, 890–891 (Iowa 1976); *State v. Fryer, supra,* 243 N.W.2d at 6 and citations; *State v. Watson,* 242 N.W.2d 702, 705 (Iowa 1976); *State v. Hinkle,* 229 N.W.2d 744, 748–749 (Iowa 1975).

■ The last objection to the admission of evidence requires some discussion. It relates to the conduct of defendant following the hit-and-run accident and before the arrival of Deputy Smith.

Several witnesses testified defendant was seen in his yard waving a shotgun in the air and shouting obscenities. They said they were frightened by his actions and took measures to protect their own safety. The

record is not clear whether this was reported to the sheriff and was an additional reason for the investigation made by Deputy Smith. If so, this evidence would be admissible under the rule announced above. If, however, this was not a reason for Smith's investigation and would not go to explain his presence on the scene, we hold defendant's objection as to relevancy was good.

It is questionable if defendant's objection to this evidence was timely, but we express our views because this situation may well arise again if there is a retrial.

Defendant's erratic behavior as above described occurred prior to the deputy's arrival. Defendant did not have a gun when Smith arrived. He was then engaged in friendly conversation with Mr. Gray. The gun incident and the accompanying obscenities were irrelevant to the charge for which defendant was on trial and were, we believe, prejudicially so.

On retrial this evidence should be excluded unless it serves to explain the reason for Deputy Smith's presence on defendant's property.

## V. CLAIM THAT EXCULPATORY EVIDENCE WAS WITHHELD

■ Defendant accuses the State of withholding exculpatory evidence, depriving him of a defense he might otherwise have had. His motion for a dismissal of the charges against him on this ground was overruled. We point out defendant was not entitled to a dismissal, but only to a new trial, if his complaint is good.

The situation arises in this way. At the time Officer Smith arrived at defendant's house, defendant was in the yard engaged in a conversation with Sam Gray. Gray was present at all times until this affair terminated in the unfortunate shooting already described. Immediately after defendant was taken to the hospital, Officer Smith took Gray to the county attorney's

office where Gray dictated a statement on tape. The tape was then transcribed and submitted to Gray. He read it over, made certain changes, and signed it.

In response to his request for copies of all oral or written statements of witnesses, defendant was furnished with a copy of Gray's signed statement. At that time he did not know the statement had first been put on tape. When this was disclosed, defendant insisted upon production of the tape itself, and, in default thereof, asked the case against him be dismissed.

At a hearing on this motion, there was testimony to show the regular procedure in the county attorney's office was to transcribe taped statements and to then reuse the tapes. This erases the statements already there. This procedure was followed in the present case. Defendant's request for the tape could not be complied with because Gray's statement had been erased by reuse.

■ The State may not suppress exculpatory evidence. If it does so, defendant is entitled to appropriate relief, including in some cases a new trial. *State v. Hall*, 235 N.W.2d 702, 721 (Iowa 1975); *State v. Fryer*, 226 N.W.2d 36, 39–40 (Iowa 1975); *State v. Peterson*, 219 N.W.2d 665, 674 (Iowa 1974).

Gray testified the principal correction he made before signing the transcribed statement was the elimination of certain references to alleged threats that defendant would kill Smith. He says this appeared several times and that he was unwilling to sign such a statement. Those passages were stricken, initialed by him and he then signed the statement. There is no showing the statement as signed was inaccurate, incomplete or different from that which was given by Gray on tape.

While the better practice would be to retain the tapes in their original form until trial has been completed, it does not appear defendant was deprived of any helpful information. Gray did not claim the written

statement as ultimately signed was not true and accurate nor that any exculpatory information had been deleted in transcribing the tape.

Defendant's claim to the contrary is without merit.

## VI. CROSS–EXAMINATION

■ The question of restricted cross-examination presents the most serious of defendant's complaints and necessitates a new trial.

■ This matter must be viewed in the unusual context in which the issue arose. At the time of trial, there was pending a civil suit instituted by defendant against the city of Reasnor and Deputy Smith for damages resulting from loss of defendant's leg following his shooting. Defendant wanted to cross-examine four of the State's witnesses, all residents of the city of Reasnor, concerning their interest in the outcome of this civil action as affecting their credibility. This is one of the established methods of testing credibility. 4 Jones on Evidence (6th Ed. Gard.), § 25.9 at 136; *State v. Klinger*, 185 N.W.2d 759, 761 (Iowa 1971); *State v. Sampson*, 248 Iowa 458, 461, 79 N.W.2d 210, 212 (1956). In this case it was not allowed.

The State appears to concede that the ruling was error but says the interest of the witnesses was so insignificant that any error would be harmless. We do not agree.

When Mrs. Lamb, the witness whose testimony first raised this issue, was on the stand and when cross-examination along the above lines was disallowed, defendant made an offer of proof out of the presence of the jury. We quote therefrom:

"Q. Mrs. Lamb, you have stated on direct examination that you run a business here in Reasnor, Iowa, that you have described?

"A. Yes.

"Q. Do you own the building and the property that we are talking about?

"A. Yes.

"Q. You do?

"A. Yes.

"Q. And you have also testified that you own a residence in Reasnor, Iowa?

"A. Yes.

"Q. And you own that property that your home sits on and the home as well?

"A. Yes.

"* * *

"Q. Okay. It is my understanding that you are aware of the fact a substantial lawsuit has been filed on the facts and circumstances arising out of this incident which you have just discussed?

"A. Yes.

"Q. And you know that it had been in the paper and you have read something about it in the paper, have you not?

"A. Not lately.

"Q. You'll have to answer yes or no.

"A. Yes.

"Q. And in the paper you became aware of the fact that there was a two million dollar lawsuit in this case?

"A. Yes.

"Q. All right. Are you aware of the fact that the property owners will be required, if successful on that lawsuit, to pay those damages, correct?

"A. I suppose.

"Q. Okay. Which means, then, so far as these facts and circumstances are concerned and based upon your knowledge of the lawsuit and the possibility that you will be required to pay towards any judgment that is gotten, then you have an interest in this circumstance, do you not?

"A. (No response.)

"Q. What I'm saying is, Mrs. Lamb, and let me back up and strike that last question. What I'm saying also is the fact that the members of your community have discussed this on several occasions since this incident has happened, isn't that true?

"A. Right after it happened, yes.

"* * *

"Q. I question you then based upon your previous testimony that you have an interest in these facts and circumstances so far as the civil suit and these criminal cases are concerned, do you not?

"A. Yes."

It was stipulated that three other witnesses (Mrs. Jewitt, Mr. McJunckin and Mr. Hawkins) would testify substantially the same.

In *State v. Carney,* 236 N.W.2d 44, 46 (Iowa 1975) we said:

"The primary interest secured by the confrontation clause, Amendment 6, United States Constitution, is the right of cross-examination. * * *

"A reasonable latitude must be accorded a cross-examiner but the scope thereof as to any proper subject of inquiry rests generally in trial court's sound discretion."

We pointed out there, too, that the discretion is a legal one and should not be exercised to exclude matters vital and proper to the defense of one accused. *See State v. Rowe,* 238 Iowa 237, 243, 26 N.W.2d 422, 425 (1947).

Other cases in which we have held that reasonable latitude should be accorded a cross-examiner are *State v. Droste,* 232 N.W.2d 483, 489 (Iowa 1975); *State v. Menke,* 227 N.W.2d 184, 191 (Iowa 1975). In both these cases, we reversed for an abuse of discretion in restricting cross-examination.

It is clear from the record that throughout this trial all parties were conscious of the pending civil action. Both the State and the defendant tried this case with one eye on the claim for civil damages. As shown by the offer of proof, some of the witnesses were also sensitive to the pending damage suit. The record shows there was considerable publicity in Reasnor concerning this matter, so much so that a change of venue on that ground was granted. As appears from Mrs. Lamb's *in camera* examination, the question of the city's liability was a matter of discussion among the town residents, including the witnesses. The State argues any financial interest of the

individual witnesses would be slight. This may or may not be true. More important on the question of interest is what these witnesses *thought* that interest would be. There is nothing to show the witnesses' state of mind on this question, which is just what cross-examination would have disclosed.

The trial court's refusal to permit defendant to show the interest of these witnesses as reflecting on their credibility was reversible error requiring a new trial.

VII. We have considered all of defendant's complaints and have discussed at length those which are likely to recur when the case is tried again.

For the reasons stated in Division VI hereof the case is reversed and remanded for a new trial.

REVERSED AND REMANDED.