# IN THE COURT OF APPEALS OF IOWA

No. 15-1115
Filed August 17, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**SANTONYO PENDLETON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Todd A. Geer, Judge.

The defendant appeals from his conviction for sexual abuse in the third degree. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

Santonyo Pendleton appeals from his conviction for sexual abuse in the third degree. Pendleton maintains the district court erred in failing to instruct the jury on the lesser-included assault-based offenses. In the alternative, he raises the issue of jury instructions on lesser-included offenses as a claim of ineffective assistance of counsel, and he adds two additional claims of ineffective assistance. He maintains trial counsel was ineffective for failing (1) to request the jury be instructed of the limited purpose for which an interrogation video could be considered, and (2) to move for judgment of acquittal on the basis the State did not prove the decedent was still alive at the time of the sex act.

**I. Background Facts and Proceedings**

On December 3, 2014, shortly before 2:00 a.m., Waterloo police officers responded to a 911 call regarding a nonresponsive woman at Pendleton's home. Although officers and medics attempted resuscitation, the woman never regained consciousness and was later pronounced dead. An autopsy indicated the woman died accidentally as a result of "acute mixed drug intoxication." At the time of the woman's death, she had a blood alcohol content of .344 and had methamphetamine in her system. The medical examiner opined that either the alcohol or the methamphetamine could have caused her death on its own but death likely resulted from the combined effect of the substances.

As part of the investigation immediately following the woman's death, officers took and searched Pendleton's cellular phones. Text messages on the phones corroborated Pendleton's claim that he and the woman had met to engage in a consensual sexual encounter. However, the officers recovered three

videos from Pendleton's phones that were recorded in the early morning hours of December 3, one of which showed him digitally penetrating the woman while she appeared to be asleep or unconscious. As a result, on February 24, 2015, Pendleton was charged by trial information with sexual abuse in the third degree, in violation of Iowa Code section 709.4(1)(d) (2015) ("A person commits sexual abuse in the third degree when the person performs a sex act . . . [and t]he act is performed while the other person is mentally incapacitated, physically incapacitated, or physically helpless."). The State later amended the trial information to seek the habitual offender sentencing enhancement.

Pendleton's jury trial commenced on May 19, 2015. At trial, the State played the video recordings recovered from Pendleton's phones without objection by Pendleton. In the main video, Pendleton records the woman naked and laying in a bed. Pendleton can be heard saying, "She's drunk as hell, tripping out." He moves her hair from her face, and the woman remains with her eyes shut; she does not respond. Thirty-nine seconds into the video, the woman can be seen opening and closing her mouth. Less than thirty seconds later, Pendleton begins digitally penetrating the woman. She does not visibly respond, and Pendleton narrates, "She's drunk as hell; look at this shit." The entire video lasts one minute and thirty-five seconds, and the woman never opens her eyes or reacts to either Pendleton's actions or comments. The State also played, without objection, a recording of a telephone conversation between one of the investigators and Pendleton, where the investigator asks Pendleton to explain the video showing him digitally penetrating the woman.

Two days later, the jury convicted Pendleton of sexual abuse in the third degree.  Pendleton admitted he was an habitual offender.  He was sentenced to a term of incarceration not to exceed fifteen years, with a three-year mandatory minimum.

Pendleton appeals.

## II. Standard of Review

We review a claim the district court failed to give a required instruction for correction of errors at law.  *See Alcala v. Marriott Intern., Inc.*, ___ N.W.2d ___, ___, 2016 WL 3201687, at *7–8  (Iowa 2016) (explaining instructions that are within the court's discretion to give are reviewed for an abuse of discretion, but instructions the court is required to give are reviewed for correction of errors at law).

Because claims of ineffective assistance have their basis in the constitution, we review de novo.  *State v. Willis*, 696 N.W.2d 20, 22 (Iowa 2005).

## III. Discussion

### A. Error Preservation

Pendleton maintains the district court erred in failing to instruct the jury on the lesser-included offenses of assault with intent to commit sexual abuse and simple assault.  Pendleton concedes he did not object to the given instructions or offer other proposed jury instructions at trial, but he maintains he can challenge the district court's action on appeal because the district court has a duty to instruct the jury on the applicable law in the case independent of a defendant's objections.  *See State v. Van Rees*, 246 N.W.2d 339, 343 (Iowa 1976) ("The obligation of the court to instruct is well settled.  Even without a request, the court

must instruct on all material issues so that the jury understands the matter which they are to decide.").

Here, the district court stated on the record:

> I did have an off-the-record discussion with counsel regarding any potential lesser-included offenses. As things stand now, I believe that we are of the impression that there will be no lesser-included offenses submitted. I also will prepare a final set of proposed instructions based upon the theories that are set forth in the trial information. So, [prosecuting attorney], if you decide you want to attempt to add some theories, please let me know about that, and if either counsel do discover any lesser offenses that they feel should be submitted as lesser-included offenses, please let me know so I can include those in a proposed set of instructions.

We have a "long-established rule that a right to jury instructions on lesser-included offenses is conditioned upon a request for such instructions or an objection to the court's failure to give them." *State v. Wallace*, 475 N.W.2d 197, 202 (Iowa 1991). Pendleton did not request the instructions he now asserts should have been included,[1] and he did not alert the court to any issues with such omission. Moreover, "[t]o preserve error for appellate review, a party must alert the district court to the issue at a time when the district court can take corrective action." *Schmitt v. Koehring Cranes, Inc.*, 798 N.W.2d 491, 499 (Iowa 2011).

For these reasons, we will consider Pendleton's complaint under his alternative argument, namely that counsel was ineffective for failing to request the jury be instructed on the lesser-included offenses.

---

[1] Defense counsel did request that the court include an instruction regarding the crime of invasion of privacy, pursuant to Iowa Code section 709.21. The court ruled that it was not a lesser-included offense but rather was a different crime that could have been charged and was not. For that reason, the court did not include the requested instruction. Pendleton does not appeal that decision.

**B. Ineffective Assistance**

To prevail on a claim of ineffective assistance of counsel, Pendleton must prove by a preponderance of the evidence (1) his attorney failed to perform an essential duty and (2) prejudice resulted from the failure. *See State v. Rodriguez*, 804 N.W.2d 844, 848 (Iowa 2011). We measure counsel's performance against an objective standard of reasonableness under prevailing professional norms. *State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012). There is a presumption counsel performed competently. *Id.* Prejudice exists where the defendant proves by a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 496. We look to the cumulative effect of counsel's alleged errors to determine whether Pendleton satisfied his burden regarding the prejudice prong. *Id.* at 499. Pendleton's claim fails if either element is lacking. *See Everett v. State*, 789 N.W.2d 151, 159 (Iowa 2010). Although we prefer to preserve ineffective-assistance claims for development of the record, *see State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006), here, the record is adequate for us to decide the claim on direct appeal.

Pendleton enumerates three ways in which he believes trial counsel was ineffective. He asserts counsel was ineffective for failing (1) to request the jury be instructed on lesser-included offenses; (2) to request the jury be instructed of the limited purpose for which an interrogation video could be considered; and (3) to move for judgment of acquittal on the basis the State did not prove the decedent was still alive at the time of the sex act. Because the evidence of Pendleton's guilt is overwhelming, Pendleton is unable to establish how

counsel's alleged failures affected the result of the proceeding. *See State v. Parker*, 747 N.W.2d 196, 211 (Iowa 2008) (rejecting the defendant's arguments of trial counsel's alleged failures affecting the outcome of the trial because "the evidence of guilt was overwhelming"); *see also State v. Belken*, 633 N.W.2d 786, 802 (Iowa 2001) (finding counsel was not ineffective where the State conceded it violated the discovery rules and trial counsel had not objected because "the evidence against [the defendant] was strong" and the outcome of trial was not in doubt).

The video viewed by the jury showed Pendleton performing a sex act on an unresponsive woman. The jury was instructed that a person is mentally incapacitated when "that person is temporarily incapable of controlling the person's own conduct due to the influence of a narcotic . . . or intoxicating substance," and a person is physically helpless when "a person is unable to communicate an unwillingness to act because the person is unconscious, asleep, or otherwise physically limited." The medical examiner testified the woman had a possibly-fatal blood alcohol content as well as methamphetamine in her system at the time of her death. Additionally, the medical examiner opined the woman had reached a "coma-like state" sometime before her death. Moreover, during the video, taken less than two hours before the police were dispatched for an unresponsive woman, Pendleton himself twice describes the woman as "drunk as hell," and once adds that she is "tripping out."

Without jury nullification, which has been rejected in Iowa, Pendleton cannot show that counsel's failure to request instructions of lesser-included offenses probably changed the outcome of the proceedings. *See State v. Willis,*

218 N.W.2d 921, 925 (Iowa 1974) ("Jury nullification exalts the goal of particularized justice above the ideal of the rule of law. We are persuaded the rule of law should not be subverted. A central theme in our constitutional system is that no man is above the law and all are equally accountable to it. The people are sovereign, but they exercise their sovereignty through government rather than juries. We hold juries should not be told they have a right to disregard the law given them in the court's instructions."). Nor can Pendleton show he was prejudiced by the absence of a limiting instruction regarding the phone interview under these facts and the overwhelming evidence of guilt. Although the investigator's questions of Pendleton contained challenges to his veracity, a limiting instruction would not have undermined the strength of the State's case, especially when we consider the tapes made by Pendleton. Moreover, because the court views the evidence in the light most favorable to the State in a motion for judgment of acquittal and the woman can be seen shutting and opening her mouth approximately thirty seconds before Pendleton begins digitally penetrating her, any claim the woman was deceased at the time of the sex act would have been meritless. *See State v. Graves*, 668 N.W.2d 860, 881 (Iowa 2003) ("Trial counsel has no duty to raise an issue that has no merit.").

Because Pendleton cannot establish he was prejudiced by counsel's alleged failures, his claims of ineffective assistance fail. We affirm.

**AFFIRMED.**