Britton JOHNSON, Appellant,

v.

CIVIL SERVICE COMMISSION OF the CITY OF CLINTON, Iowa, Appellee.

No. 83–499.

Supreme Court of Iowa.

June 13, 1984.

Rehearing Denied July 11, 1984.

Philip Mears and Richard H. Zimmerman of Mears, Zimmerman & Mears, Iowa City, for appellant.

Bruce D. Johansen, City Atty., for appellee.

Considered by McCORMICK, P.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

SCHULTZ, Justice.

The Civil Service Commission of Clinton, Iowa, (Commission) and a city police officer appeal from a district court decision upholding the Commission's determination that the officer was guilty of misconduct but substituting a two-year suspension for the termination of employment imposed by the police chief and the Commission. Based on our de novo review, we conclude the officer, Britton Johnson, was guilty of misconduct and the nature of his misconduct warranted his removal from the police department. Thus, we affirm in part, reverse in part and remand for entry of judgment consistent with this opinion.

The charge of misconduct against Johnson arose out of the circumstances surrounding the arrest of Kevin Susie. In the early morning hours of August 18, 1981, Susie was the target of a high-speed chase which careened through city streets at speeds of up to eighty miles-per-hour. The pursuit lasted for five or ten minutes and only ended when Susie smashed up his car. Both the chase and the ensuing crash resulted in considerable property damage.

Another police officer, Eugene Deedon, was driving the police car leading the pursuit with Johnson's car not far behind. Apparently all five of the police vehicles in

use that night became involved in the chase, and six officers were on the scene during Susie's arrest. As Deedon approached Susie's car, he ordered him out of the vehicle. When he did not respond, Deedon opened the driver's door, and Susie finally got out of the car. The officers testified that Susie made assaultive moves, and all agreed that Deedon and Johnson physically wrestled Susie to the ground. It is undisputed that Susie was struck in the back at least three times by Johnson with his large metal flashlight. What is hotly disputed is whether the blows were struck when Susie was still standing or lying flat on the ground and whether the flashlight was used as a club or incidentally made contact with Susie as Johnson struck him with his fist. Essentially then, the central issue in this appeal is whether Johnson used excessive force or only that force necessary to subdue Susie and take him into custody. Whatever the manner of force and whenever it was applied, three long deep bruises were readily visible on Susie's back when he was photographed the next day by a member of the police department.

On September 10, 1981, after having already been temporarily suspended, Johnson was peremptorily terminated by the police chief for using excessive force in arresting Susie. Subsequent to the termination, all appropriate jurisdictional steps pursuant to Chapter 400 were followed, and Johnson timely appealed to the Civil Service Commission. Following a hearing, the Commission issued its decision upholding Johnson's discharge. Johnson pursued the matter further by appealing to district court, Iowa Code section 400.27, where the matter was heard anew in a full evidentiary trial. As noted earlier, the court substantiated the Commission decision in all respects except for ordering a two-year suspension in place of termination. Johnson and the Commission both appealed.

On appeal, Johnson has raised several assignments of error. Specifically, he claims that (1) he was denied due process because the police department did not follow its own internal procedures in disciplining him, (2) evidence of disparate discipline of other employees in similar situations was both relevant and necessary in his disciplinary action, (3) all testimony concerning his polygraphic examination should have been excluded at trial, (4) in a civil service appeal to district court, the burden of proving misconduct by a preponderance of the evidence is on the city, and (5) the evidence did not establish Johnson was guilty of misconduct. The Commission, on the other hand, asserts the trial court's ruling was correct in all respects except that its decision to terminate Johnson should have been sustained.

■ I. In his first assignment of error, Johnson asserts he was denied due process because the police department did not follow its own internal procedures in disciplining him. This claim hinges on the fact that his discipline was handled by the police chief rather than being referred to an internal review board established by the department in 1977 to investigate infractions by fellow officers and offer recommendations to the chief concerning appropriate sanctions. In passing, we note that Chapter 400 does not provide any authority for this kind of internal review in civil service proceedings. Without venturing an opinion on whether circumvention of an internal review board, established without statutory authority, can result in a due process violation, we determine Johnson's rights were not violated in this case by the failure to refer the matter to the board. Both the policy statement establishing the board and the chief's trial testimony revealed that the board's function was merely advisory and that the ultimate authority resided in the chief. Moreover, as noted in the policy statement, the source of referrals to the board was the chief. The chief stated at trial that he never considered referring Johnson's disciplinary matter to the board. This decision was apparently based on the fact that the board was not allowed to

recommend termination,[1] and the chief felt the allegations, if true, warranted Johnson's removal from the force. Given the advisory nature of the board and the limitations placed on it in terms of what penalties it could recommend, we find no due process violation by the chief's decision to forego input from the board and handle the matter himself.

■ II. Johnson next argues that evidence of disparate treatment of another officer disciplined by the city was relevant and material, particularly to this claim that termination was inappropriate. Thus, he contends the trial court erred in not compelling production of the records of a fellow officer who was charged with excessive force for two different incidents and who was only suspended for thirty days. Compulsion was resisted by the city on the ground that the records were confidential under Iowa Code section 68A.7(11)[2] and not subject to disclosure unless otherwise ordered by the court. Although the trial court mentioned section 68A.7(11), its order denying the motion to compel was based on an independent determination that these records were irrelevant to the issues in Johnson's disciplinary action. Johnson's offer of proof tended to establish that the officer's use of excessive force was at least as egregious, as Johnson's misconduct, if not more so. We nevertheless agree that evidence of disparate treatment was not relevant.

Johnson's alleged misconduct concerned the use of excessive force which, if true, raised a serious question about his fitness to handle the responsibilities of a police officer. Misconduct involving the use of unnecessary force always implicates the public interest, and we cannot ignore what the public good requires. Thus, while fair-

ness might dictate equal treatment in most circumstances, the welfare of the general public is of such paramount concern in this kind of case that it overrides considerations of like punishment. If Johnson should be removed from the force, we would not want to compound the harm by holding he cannot be discharged just because another officer was wrongfully retained. Thus, when an officer's misconduct poses a serious threat to the safety of the public, evidence of disparate treatment is not determinative.

III. As a condition of continued employment, Johnson was required to submit to a polygraph examination concerning the events surrounding Susie's arrest and the report he made on the incident. At trial, the court permitted the examiner to testify about the results of the polygraph and certain statements Johnson made during the examination. In its holding, the trial court did not rely on the test results; however, it did take into account the admissions Johnson made during the polygraph test. Since we will not consider the results of the polygraph test in our review, we only address Johnson's claim that his statements were inadmissible. Although he has consistently denied making any admissions, Johnson nevertheless claims the trial court erred in admitting any statements made during his polygraph examination because the setting was accusatory and his statements were coerced.

■ In arguing that his admissions should have been excluded, Johnson relies on the Fifth and Fourteenth Amendments to the United States Constitution. By invoking the Fifth Amendment, he apparently contends his right against self-incrimination was violated by allowing his state-

---

1. The policy statement establishing the board indicated that the board in the area of penalty recommendations was limited to recommending either (a) no disciplinary action, (b) a letter of reprimand, (c) time off with option to work on day off, or (d) time off without pay.

2. Recently in *In re Gillespie,* 348 N.W.2d 233, 236 (Iowa 1984), we discussed the scope of the exceptions to disclosure contained in section

68A.7, and there held that these exceptions were not applicable to a teacher termination hearing; thus, the trial court should not have relied on this section in quashing the teacher's subpoena for teacher evaluations and student transcripts, although the court could, on remand, following an in camera inspection, exclude material it found irrelevant to the issues before the school board.

ments to be used against him in a disciplinary proceeding. By its terms, the Fifth Amendment prohibition against a person being compelled to be a witness against himself is expressly limited to criminal cases. Thus, while this privilege may be invoked in civil or criminal proceedings, the right to exclude evidence because it is testimonial and incriminating is limited to criminal proceedings. *See United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980).

■ His reliance on the Fourteenth Amendment apparently stems from a claim that the use of his admissions was fundamentally unfair and violates due process. In support of this contention, he cites *Oddsen v. Board of Fire and Police Commissioners,* 108 Wis.2d 143, 321 N.W.2d 161 (1982), where the Wisconsin court held that the tactics employed by a police department to obtain confessions from two of its officers were so reprehensible as to result in a denial of due process.[3] *Id.* at 148, 321 N.W.2d at 164. In *Oddsen,* two officers, suspected of having sexual relations, were interrogated for over ten hours. They refused to let the female officer keep her appointment with a doctor even though she was vomiting blood and extremely ill. Instead, they kept hounding the two officers until both of them, as a result of their exhaustion and extreme duress, confessed to committing adultery. Given these circumstances, the court suppressed their admissions and said the officers could not be disciplined and must be reinstated since their unlawful "confessions" were the only evidence of misconduct on the part of the officers. *Oddsen,* 108 Wis. at 165, 321 N.W.2d at 173. While we agree with the Wisconsin court that there may be occasions in a disciplinary investigation in which the means of obtaining evidence was so reprehensible as to shock the conscience and offend due process, this case does not rise to that level. In particular, the only evidence suggesting coercion was John-

son's testimony concerning statements made to him by a superior who accompanied him to the examination and comments made by the examiner during the polygraph test. Much of this evidence, however, was refuted by the examiner's testimony. The trial court apparently believed the examiner and gave weight to his account. Even though our review is de novo, we give weight to the trial court's finding of fact when the credibility of the witness is a factor. *Sieg v. Civil Service Commission of West Des Moines,* 342 N.W.2d 824, 829 (Iowa 1983). From our review, we find that Johnson's admissions were not obtained by coercion and thus not in violation of his due process rights.

■ IV. Johnson's next assignment concerns his assertion that the city bears the burden of proving misconduct in civil service appeals pursuant to section 400.27. He points out the trial court erred by placing the burden of proof on him, the discharged employee. We conclude Johnson is correct, and the trial court misplaced the burden of proof. We also note the court erroneously concluded that it was required to uphold the Commission's decision if there were any fair and reasonable grounds for doing so.

We recently discussed, at length, the scope of the district court's role in an appeal under section 400.27. *Sieg,* 342 N.W.2d at 828–29. Section 400.27 provides that an appeal from the Commission is heard de novo by the district court as an action in equity. In *Sieg,* we concluded that in an appeal "from an adjudicatory decision, rather than executive decision involving the expertise of the Commission, the district court shall try the case anew and give no weight or presumption of regularity to the findings of the Commission." *Id.* at 828. When the Commission hears an appeal from a peremptory suspension or removal, it is acting in an adjudicatory capacity. *Id.* Since the matter is tried anew, the burden of proof would be upon the

---

**3.** The court also held the statements were coerced and involuntary because adultery was a felony in Wisconsin and the officers were not advised the statements could not be used against them in a criminal prosecution. *Oddsen,* 108 Wis. at 164–65, 321 N.W.2d at 172–73.

party seeking to show misconduct, the Commission in district court. *See* E. McQuillin, *The Law of Municipal Corporations*, § 12.261(c) (3d ed. 1979) ("The burden of proving the incompetency or misconduct of the officer or employee sought to be removed is on the one alleging it."). A peremptory removal under section 400.19 is without hearing; the proceeding before the Commission is the first original hearing afforded the officer. Section 400.22 requires the entity that made the discharge to file a written specification of the charges and grounds upon which the decision was based. The statutory scheme and general fairness dictate that the party making the charges should bear the burden of proof before the Commission and before the district court on its trial anew.

Despite these errors, we conclude the decision is not reversible if the trial court reached the correct result. Since our review is de novo, *Sieg*, 342 N.W.2d at 826, we will review the record anew to determine if the trial court's decision was correct even though it committed error in arriving at its ruling.

In this regard, we now turn to Johnson's claim that the Commission failed to prove misconduct and also discuss both Johnson's and the Commission's complaints about the two-year suspension imposed by the district court.

■ V. Although the trial court misplaced the burden of proof, we agree with its assessment of the evidence:

The court finds that appellant hit Mr. Susie at least twice while Susie was on the ground and on his stomach. At the time of the blows, both officers had Susie "pinned down." The blows were struck by appellant using his metal flashlight as a club and that the blows were extremely forceful. Even though Mr. Susie was yelling and trying to get up, the entire record shows that the blows by the appellant were not necessary to subdue or control Mr. Susie. In reaching these findings, the court gives no weight to the polygraph result. However, the appellant did admit to the polygraph examiner that he used excessive force and that he was mad. The court does give weight to these admissions and to the two witnesses who testified to the blows.

Our own examination of the evidence confirms these findings of the trial court. While the most damaging testimony against Johnson came from the victim and a fellow officer who both were impeached to some degree, we find, as did the trial court, that their eyewitness accounts of the beating were entirely credible and consistent with the other evidence.

The best evidence, of course, is the photographs taken of Susie's injuries. Additionally, Johnson's superior described the injuries in great detail and testified they were more severe than they appeared in the pictures. Given the consistency between the pictorial evidence and the eyewitness accounts, the Commission met its burden of proving misconduct by a substantial margin.

Nonetheless, Johnson claims the misconduct, if any, did not fall within the definition set out in the city's personnel manual. Specifically, he argues the ground for his dismissal was gross misconduct, and departmental guidelines require "malicious assault" before gross misconduct arises. Thus, so his argument goes, no malice can be inferred from blows sustained in that part of the back least susceptible to injury since he easily could have struck Susie in other parts of the body that would have caused permanent damage if he had been motivated by malice.

When making an arrest, a peace officer is justified in using that amount of force which he reasonably believes is necessary to effect arrest. Iowa Code § 804.8. Consequently, an assault only occurs if the peace officer does not reasonably believe the particular force was necessary in the circumstances. Assuming without deciding that a finding of malice requires the intentional doing of a wrongful act with a design to injure, there is nevertheless substantial evidence of malice. The severity of the bruises belies Johnson's claims that the flashlight incidentally struck Susie's

back as he pushed him with his fist. The harshness of the blows was unnecessary, particularly in light of the fact that Johnson had help in subduing Susie and several other officers immediately arrived on the scene. We think these facts alone support an inference of malice. In addition, the existence of malice is substantiated by Johnson's own statement to the polygraph examiner that he used excessive force and he was mad at the time. In sum, we conclude the evidence amply supported a finding of malicious misconduct.

Neither the Commission nor Johnson is satisfied with the suspension for a two-year period. Johnson claims that even under the city's interpretation of the facts, this is just a case of an aggressive police officer who got carried away. In determining a two-year suspension was appropriate, the trial court considered Johnson's six and one-half years on the force, his prior good ratings and the opinion of a counseling psychologist that Johnson was fit to be a police officer. The Commission, on the other hand, believes that the public good is better served by discharging a police officer who lacks the discretion, judgment and control that keeps a good officer from inflicting serious injury on a citizen, albeit a lawbreaker.

We indicated in *Sieg* that the statutes do not set out the parameters on the quantity or quality of misconduct that should precipitate a suspension or discharge and that our existing case law is of little assistance in this regard. *Sieg*, 342 N.W.2d at 829–30. Additionally, this case is difficult because the charge of misconduct is Johnson's first offense. Nonetheless, the nature of the offense is abhorrent when viewed from the perspective that an officer is supposed to protect citizens rather than injure them. Moreover, while it is distasteful to remove a police officer, protection of the public and furthering the general good must be our paramount concern. *Sieg*, 342 N.W.2d at 829. *See also Anderson v. Civil Service Commission*, 227 Iowa 1164, 1168, 290 N.W. 493, 495 (1940) ("The discharge is not for the purpose of punishing the officer, ... but for the protection of the pub-

lic.... [t]o the end that the public safety may not be imperiled."). Finally, although Johnson's evaluations were good, they also consistently noted that he needed to improve on his interactions with the public.

For all these reasons, we conclude Johnson's conduct warranted removal from the police force. He has not shown extenuating circumstances. Instead, while admitting that he struck Susie harder than he had ever hit anyone, he still maintains his actions were justified. We, as did the chief, the mayor, the Commission, and the trial court, determine there was no justification for at least two of the blows Johnson inflicted upon Susie. An unjustified assault by a police officer cannot be tolerated. Moreover, were Johnson to remain on the force, we cannot overlook the possibility that the next stressful situation he confronts could produce an overreaction resulting in more serious consequences than those presented by this case.

Having considered all of the arguments of the parties, we affirm the trial court's finding of misconduct but reverse its imposition of a two-year suspension and remand for entry of judgment consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH DIRECTIONS.