Anthony **CHELF**, Plaintiff–Appellant,

v.

**CIVIL SERVICE COMMISSION OF The CITY OF DAVENPORT, Iowa,** Defendant–Appellee.

No. 92–1757.

Court of Appeals of Iowa.

Feb. 25, 1994.

Jack L. Brooks of Anderson & Nelson, Davenport, for appellant.

Mary Thee, City Legal Dept., Davenport, for appellee.

Heard by SACKETT, P.J., HABHAB, J., and McCARTNEY, S.J.*

HABHAB, Judge.

Davenport police officer appeals from the district court's ruling upholding his discharge for use of excessive force. Based on our de novo review, we conclude the officer, Anthony Chelf, was guilty of misconduct and the nature of his misconduct warranted his removal from the police department. Thus, we affirm.

The charge of misconduct against Chelf arose out of the circumstances surrounding the arrest of Nikolaus Meyer. On June 12, 1991, Chelf was involved in a high-speed chase of Meyer, who was driving a motorcycle. Members of the Davenport Police Department, the Scott County Sheriff's Department and the Iowa State Highway Patrol participated in this chase which reached speeds of 80 miles per hour and lasted about ten minutes.

Chelf pulled alongside the motorcycle and inched it towards the curb until it stopped. Deputy Sheriff Garden forced Meyer off his motorcycle and placed him on the ground face down. Then the deputy grabbed his right arm and brought it to an arm bar and put his left hand upon Meyer's forehead.[1] Chelf thought the deputy did not have Meyer under control, so he claims he attempted to strike Meyer in the legs three to six times with his flashlight in order to gain control. Chelf states he does not know where his blows landed. One of Chelf's blows struck the deputy's hand which was on Meyer's forehead, requiring four stitches. The third officer arriving at the scene attempted to assist the deputy in handcuffing Meyer. Chelf was told to "back off" which he did. Meyer asked why he was being hit and Chelf apparently stepped on the side of Meyer's head. Chelf was told again to "back off." Chelf admits he was angry, emotional and upset during the incident.

Chelf had been reprimanded previously for the use of excessive force for an incident occurring in October 1989 after a high-speed chase. Officer Schaeffer testified that in the early morning hours of October 2, 1989, after a pursuit, he had the suspect kneel on the ground with his fingers interlocked behind his head. Schaeffer was holstering his service revolver so he could frisk the suspect. He was in the process of telling Chelf to bring him some cuffs when Chelf struck the suspect twice in the head/shoulder area with a flashlight. The blows knocked the suspect and Officer Schaeffer to the ground. Chelf struck the suspect two more times while cuffing him. Later Chelf again pulled the suspect out of Officer Schaeffer's grasp, shouted obscenities and threw him against the car. Chelf grabbed the suspect around the throat and started threatening him. At this point another officer took custody of the suspect and Chelf was told to knock it off.

On the basis of the June 1991 incident, Chelf was discharged from his position as a police officer for the use of excessive force in violation of the police department's policy. The Civil Service Commission upheld the termination of Chelf's employment. Chelf appealed to the district court. Chelf attempted to introduce evidence regarding other disciplinary actions claiming that such evidence was admissible because of the vague standards of conduct imposed by the statutes and departmental rules, that the department policy required prior disciplinary actions to be considered, and that such evidence was relevant to his claim that he was discharged for political reasons. The district court determined that evidence of prior disciplinary actions was not relevant.

The testimony of the officers witnessing the incident given before the commission hearing was submitted to the district court by agreement of the parties.

---

* Senior judge from the 2nd Judicial District serving on this court by order of the Iowa Supreme Court.

1. Garden felt that Meyer was under control. He testified that no offensive actions were taken by Meyer and it was not necessary to strike him.

On October 5, 1992, the district court entered a ruling upholding Chelf's termination. The court determined Chelf used excessive force during the arrest of Meyer. Chelf appeals.

## I. Scope of Review.

■ Our supreme court has discussed at length, the scope of the district court's role in an appeal under section 400.27. *Johnson v. Civil Serv. Comm'n,* 352 N.W.2d 252, 256–57 (Iowa 1984); *Sieg v. Civil Serv. Comm'n,* 342 N.W.2d 824, 828–29 (Iowa 1983). The final ruling or decision of the Civil Service Commission is appealable to the district court. Iowa Code § 400.27. When appealed, the matter is heard de novo by the district court as an action in equity. *Id.* When the Commission hears an appeal from a peremptory suspension or removal, it is acting in an adjudicatory capacity. *Johnson,* 352 N.W.2d at 256. In an appeal from an adjudicatory decision, the district court shall try the case anew and give no weight or presumption of regularity to the findings of the commission. *Id.* Our review of the district court's ruling is de novo and though we give weight to the trial court's findings of fact, we are not bound by them. *Sieg,* 342 N.W.2d at 826.

Chelf asserts the district court applied an improper standard of review and erroneously placed an improper burden of proof upon Officer Chelf. We find no merit in this argument.[2]

## II. Evidence of Past Conduct and Disciplinary Action Involving Other Officers.

■ Chelf next claims the district court committed reversible error in excluding evidence of past conduct and disciplinary actions involving other officers.

In *Johnson,* our supreme court found evidence of disparate treatment was not relevant because the alleged misconduct concerned the use of excessive force which, if true, raised a serious question about the officer's fitness to handle the responsibilities of a police officer. *Johnson,* 352 N.W.2d at 255. Our supreme court stated:

Misconduct involving the use of unnecessary force always implicates the public interest, and we cannot ignore what the public good requires. Thus, while fairness might dictate equal treatment in most circumstances, the welfare of the general public is of such paramount concern in this kind of case that it overrides considerations of like punishment. If [the officer] should be removed from the force, we would not want to compound the harm by holding he cannot be discharged just because another officer was wrongfully retained. Thus, when an officer's misconduct poses a serious threat to the safety of the public, evidence of disparate treatment is not determinative.

*Id.* For the reasons stated in *Johnson,* we find the records of the past conduct of other officers and resulting disciplinary actions irrelevant. Therefore the records are not admissible.

## III. Excessive Force.

■ The main issue in this case is whether Chelf used excessive force in the apprehension of Meyer thereby justifying his termination for misconduct.

Iowa Code section 804.8 (1991) states in part:

A peace officer, while making a lawful arrest, is justified in the use of any force which the peace officer reasonably believes to be necessary to effect the arrest.

The police department general order GO.16 mirrors this code section.

Chelf claims the test is a subjective standard requiring the inference of malice or ill will to establish excessive force. The city claims the standard is an objective reasonableness standard.

We find the "reasonableness" inquiry in Iowa Code section 804.8 is an objective standard. We find support for our interpretation in *Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 1871–72, 104 L.Ed.2d 443, 455–56 (1989). In *Graham,* the United

---

**2.** Even if the district court had placed the burden of proof on Chelf, since our review is de novo, we would not reverse if we determined the trial court's decision was correct, even though it committed error in arriving at its ruling. *Johnson v. Civil Serv. Comm'n,* 352 N.W.2d 252, 257 (Iowa 1984).

States Supreme Court looked at the issue of excessive force in the context of a civil rights case. *Id.* at 388, 109 S.Ct. at 1867, 104 L.Ed.2d at 450. The Court stated:

> As in other Fourth Amendment contexts, ... the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

*Id.* at 397, 109 S.Ct. at 1872, 104 L.Ed.2d at 456. The Court specifically rejected a test that considered whether the officer acted in "good faith" or "maliciously and sadistically for the very purpose of causing harm" because it puts in issue the subjective motivations of the individual officers. *Id.*

■ We now turn to Chelf's claim that the Commission has failed to prove misconduct. After reviewing the record, we find Chelf used excessive force on June 1991. Although the resulting injuries were relatively minor, it raises serious questions about whether Officer Chelf has the self-control necessary in pursuit situations.

When this incident is viewed in conjunction with the October 1989 incident, we find Chelf "lacks the discretion, judgment and control that keeps a good officer from inflicting serious injury on a citizen, albeit a lawbreaker." *Johnson,* 352 N.W.2d at 258. We agree with the district court that if Officer Chelf were to remain on the force the next stressful situation could produce an overreaction resulting in more serious consequences. We affirm the district court's findings that Anthony Chelf was guilty of misconduct and the nature of his misconduct warranted his removal from the police department.

**AFFIRMED.**

McCARTNEY, S.J., concurs.

SACKETT, P.J., specially concurs.

SACKETT, Judge (concurring specially).

I concur with the majority opinion in all respects and decide the case on the same basis as the majority.

While not advanced as an argument for affirmance, I find the facts surrounding the high-speed chase additional evidence supporting affirmance.

A motorcycle allegedly ran a red light and did not stop for Chelf's siren and red light. Chelf then followed the motorcycle in a high-speed chase through the City of Davenport at speeds up to eighty miles an hour, running stoplights, and failing to stop at intersections.

The danger Chelf created driving at such speeds was not, in my opinion, justifiable for stopping a person who ran a stoplight. The high-speed chase endangered the life and safety of a large number of persons in the area of the chase. Fortunately, no one was injured in the chase but, weighing the need to apprehend a person running a red light with the danger posed to the public by the high-speed chase at eighty miles an hour through the city, I find the chase further evidence the officer used unreasonable force in the arrest.