# IN THE SUPREME COURT OF IOWA

No. 21–1992

Submitted December 15, 2022—Filed May 12, 2023

**GERI L. WHITE,**

Appellant,

vs.

**MICHAEL HARKRIDER, CITY OF IOWA CITY, CHRIS WISMAN,** and **JOHNSON COUNTY,**

Appellees.

Appeal from the Iowa District Court for Johnson County, Chad Kepros, Judge.

Interlocutory appeal and cross-appeal challenging a ruling on a motion to dismiss state constitutional tort claims and common law claims arising out of a warrantless arrest of the plaintiff's spouse. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

McDonald, J., delivered the opinion of the court, in which Waterman, Mansfield, and Oxley, JJ., joined. McDermott, J., filed an opinion concurring in part and dissenting in part, in which Christensen, C.J., joined. May, J., took no part in the consideration or decision of the case.

Martin A. Diaz (argued), Swisher, for appellant.

Elizabeth J. Craig (argued) and Jennifer L. Schwickerath, Assistant City Attorneys, Iowa City, Wilford H. Stone and Daniel M. Morgan of Lynch Dallas, PC, Cedar Rapids, for appellees.

Jessica A. Zupp of Zupp and Zupp Law Firm, P.C., Denison, for amicus curiae Iowa Association for Justice.

Aaron W. Ahrendson, Assistant County Attorney, Carroll, for amici curiae Iowa County Attorney's Association and Iowa State Association of Counties.

Jason C. Palmer and Benjamin J. Kenkel of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for amicus curiae Iowa League of Cities.

Brenna Bird, Attorney General, Samuel P. Langholz, Assistant Solicitor General, and Tessa M. Register, Assistant Attorney General, for amicus curiae State of Iowa.

**McDONALD, Justice.**

Geri White filed this civil suit against certain law enforcement officials and their employers arising out of the warrantless arrest of her spouse at their residence. She asserted state constitutional tort claims as well as common law claims for intentional infliction of emotional distress, trespass, and assault. The district court granted the defendants' motion to dismiss the state constitutional tort claims but denied their motion to dismiss the common law claims. We granted the plaintiff's application and the defendants' cross-application for interlocutory appeal. For the reasons expressed below, we affirm in part, reverse in part, and remand this matter to the district court for further proceedings.

## I.

We review a district court's ruling on a motion to dismiss for the correction of legal error. *Meade v. Christie*, 974 N.W.2d 770, 774–75 (Iowa 2022). "A motion to dismiss challenges a petition's legal sufficiency." *Id.* at 775. In reviewing a ruling on a motion to dismiss, we "accept[] the facts alleged in the petition as true and view[] the allegations in the light most favorable to the plaintiff." *Id.* (citations omitted). Generally, "[m]otions to dismiss are disfavored." *Benskin, Inc. v. W. Bank*, 952 N.W.2d 292, 296 (Iowa 2020). A party is entitled to dismissal only if the petition shows the claim or claims are legally deficient and the plaintiff has no right of recovery as a matter of law. *Meade*, 974 N.W.2d at 775.

## II.

On the evening of June 1, 2019, Deputy Sheriff Chris Wisman, of the Johnson County Sheriff's Office, and Officer Michael Harkrider, of the Iowa City

Police Department, were involved in the investigation of a single-car accident in which the driver drove away from the scene. At the scene of the accident, Officer Wisman noted a beer can on the road and unused rifle ammunition in the ditch. Officer Wisman suspected the driver of the vehicle had lost control of the vehicle due to intoxication and had left the scene to avoid detection. It was reported to law enforcement that a male driving a Toyota FJ Cruiser left the scene at an excessive rate of speed. It was also reported that the FJ Cruiser was substantially damaged and missing a tire.

Law enforcement officials tracked the FJ Cruiser to the residence of Geri White (White) and Daniel White (Daniel). "Deputy Wisman and many other Johnson County Deputies" along with Officer "Harkrider and many other Iowa City Police Officers converged" on the Whites' home. Law enforcement officials surrounded the house with their firearms (handguns, rifles, and shotguns) at the ready and deployed a canine unit. They did not knock on the door to see if Daniel was inside. Officer Harkrider, using a loudspeaker, announced, "Occupants of [the home], this is the Iowa City Police Department. Come to the front door. Slowly open it with your hands in the air, empty, and slowly step outside. Do it now."

White, who was in the home at the time, exited the front door as commanded and was "met by numerous law enforcement officers crouched behind vehicles, trees, and other objects, with their weapons trained" on her. Officer Harkrider and Deputy Wisman ordered White to leave the front stoop and approach the law enforcement vehicle parked in the driveway. White initially

refused to leave the stoop and asked "for an explanation for the army in front of her home," but Officer Harkrider demanded she comply and gave her an order to do so. White left the front stoop of her home, walked to the marked patrol car, and spoke with Deputy Wisman. She answered his questions. After she answered his questions, "law enforcement disbanded its perimeter and overwhelming show of force." White was not arrested.

Daniel, who was also in the home, was then arrested. He was charged with operating while intoxicated. In the subsequent criminal case for that charge, Daniel filed a motion to suppress evidence, contending his arrest was unlawful. The motion to suppress was denied. He later entered into a plea agreement in which the charge of operating while intoxicated was dismissed.

White filed this civil suit against Deputy Wisman, Johnson County, Officer Harkrider, and the City of Iowa City based on law enforcement's entry onto her property and subsequent show of force. In her amended petition, White asserted state constitutional tort claims pursuant to *Godfrey v. State,* 898 N.W.2d 844 (Iowa 2017), *overruled by Burnett v. Smith,* ___ N.W.2d___ (Iowa 2023). Specifically, she asserted claims for: (1) violation of her right to freedom of movement under article I, section 1 of the Iowa Constitution; (2) violation of her right to liberty and property under article I, section 1 of the Iowa Constitution; and (3) violation of her right to be free from unreasonable seizure and to be free of excessive force under article I, section 8 of the Iowa Constitution. She also asserted common law claims for intentional infliction of emotional distress, trespass, and assault.

The defendants moved to dismiss White's claims.[1] The district court granted the defendants' motions with respect to White's state constitutional tort claims. The district court held that article I, sections 1 and 8 were not self-executing and could not support claims for monetary relief. In addition, the district court held that even if these provisions were self-executing, state constitutional tort claims were available only against the state and its employees and not against municipalities and their employees. The district court further held there was no reason to create additional state constitutional tort claims in this case because common law causes of action could provide White relief. The district court denied the defendants' motion to dismiss White's claims for intentional infliction of emotional distress, trespass, and assault. The district court reasoned that the plaintiff "ha[d] met notice pleading standards" and that the court could not say there was no set of facts under which the plaintiff might be entitled to relief.

## III.

We first address White's interlocutory appeal of the district court's dismissal of her state constitutional tort claims. Six years ago in *Godfrey*, this court held that a plaintiff could pursue a direct constitutional tort claim for alleged violations of the due process clause of the Iowa Constitution. 898 N.W.2d

---

[1]The defendants attached to their motion to dismiss the suppression ruling from Daniel's criminal case. On appeal, the parties dispute whether this court can take judicial notice of and consider the suppression ruling in evaluating the ruling on the motion to dismiss. We need not resolve that dispute, however, because it is immaterial to our resolution of the issues. The only issue resolved in the motion to suppress was whether Daniel was lawfully seized inside the home, which is not at issue in this case.

at 871–72. Further research, reflection, and litigation have shown that decision to be demonstrably erroneous and unworkable in practice. For the reasons set forth in *Burnett*, ___ N.W.2d___, *Godfrey* has been overruled. White's constitutional tort claims thus cannot proceed. We affirm the district court's dismissal of these claims.

IV.

We now address the defendants' cross-interlocutory appeal of the district court's denial of their motions to dismiss White's common law claims for intentional infliction of emotional distress, trespass, and assault.

A.

White's amended petition avers the defendants' conduct constitutes intentional infliction of emotional distress. A claim of intentional infliction of emotional distress requires the plaintiff to prove: (1) the defendants engaged in extreme and outrageous conduct; (2) the defendants intentionally caused, or recklessly disregarded the likelihood of causing, severe or extreme emotional distress to the plaintiff; (3) the plaintiff in fact suffered severe or extreme emotional distress; and (4) the defendants' extreme and outrageous conduct was the actual and proximate cause of the severe or extreme emotional distress. *Lennette v. State*, 975 N.W.2d 380, 391–92 (Iowa 2022); *Hedlund v. State*, 930 N.W.2d 707, 723–24 (Iowa 2019). To be actionable, the allegedly tortious conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Fuller v. Loc. Union No. 106 of the United Bhd. of Carpenters & Joiners*, 567

N.W.2d 419, 423 (Iowa 1997) (quoting *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 801 (Iowa 1984)).

"[I]t is for the court to determine in the first instance, as a matter of law, whether the conduct complained of may reasonably be regarded as outrageous." *Hedlund*, 930 N.W.2d at 724 (quoting *Cutler v. Klass, Whicher & Mishne*, 473 N.W.2d 178, 183 (Iowa 1991)); *see also Lennette*, 975 N.W.2d at 391–92. Because the determination of whether conduct is sufficiently outrageous to permit recovery is a legal question, a claim of intentional infliction of emotional distress can be resolved at the motion to dismiss stage in those cases where the allegations in the petition, when taken as true, do not assert legally outrageous conduct. *See, e.g.*, *Van Baale v. City of Des Moines*, 550 N.W.2d 153, 157 (Iowa 1996) (affirming grant of motion to dismiss where allegations in petition, even when taken as true, did not constitute legally actionable outrageous conduct), *abrogated on other grounds by Godfrey*, 898 N.W.2d 844; *M.H. v. State*, 385 N.W.2d 533, 540 (Iowa 1986) (recognizing motion to dismiss is properly sustained if the court can "conclude that no state of facts is conceivable under which plaintiffs might prove their right of recovery"); *see also Paul v. Humana Med. Plan, Inc.*, 682 So. 2d 1119, 1122 (Fla. Dist. Ct. App. 1996) (stating it was for court to determine whether conduct was "so extreme and outrageous as to permit recovery" and affirming dismissal of intentional infliction of emotional distress claim (quoting *Scheller v. Am. Med. Int'l, Inc.*, 502 So. 2d 1268, 1271 (Fla. Dist. Ct. App. 1987))); *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983) (affirming dismissal of intentional infliction of emotional distress

claim where facts alleged in the petition fell short of the "strict standard" for extreme and outrageous conduct), *superseded by statute on other grounds*, N.Y. Lab. Law § 740 (McKinney 1989); *Pollock v. Rashid,* 690 N.E.2d 903, 909 (Ohio Ct. App. 1996) (per curiam) (affirming grant of motion to dismiss where "conduct alleged in the complaint [did] not, as a matter of law, rise to the extreme and outrageous level necessary for a prima facia case of intentional infliction of emotional distress"); *c.f. Osprey Cove Real Est., LLC v. Towerview Constr., LLC*, 808 S.E.2d 425, 429 (Ga. Ct. App. 2017) (reversing denial of motion to dismiss intentional infliction of emotional distress claim);.

Accepting the allegations in White's petition as true, several considerations lead us to conclude the conduct alleged does not meet the high standard—conduct so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community—that would permit recovery for a claim of intentional infliction of emotional distress. First, the alleged criminal conduct under investigation was serious in nature and warranted a serious response. Law enforcement officials were engaged in an active investigation of a one-vehicle car accident where the driver fled the scene at an excessive rate of speed in a substantially damaged vehicle missing a tire. A beer can and unused ammunition were found at the scene of the accident. The petition states that Officer Wisman suspected the driver fled because he was intoxicated. The ammunition supported the additional inference the driver was armed. Operating while intoxicated "is a relatively serious crime within the spectrum of prohibited acts in Iowa. It is the type of

crime that can support a warrantless entry into a home if probable cause and exigent circumstances are present." *State v. Lovig*, 675 N.W.2d 557, 565 (Iowa 2004).

Second, in investigating this serious crime and arresting the suspect, law enforcement officials were statutorily authorized to use "any force which the peace officer[s] reasonably believe[d] to be necessary to effect the arrest or to defend any person from bodily harm while making the arrest." Iowa Code § 804.8(1) (2019). The statutory authorization to use force cuts against the claim that the law enforcement officials engaged in outrageous conduct beyond the bounds of all decency.

Third, although statutorily authorized to use force, the law enforcement officials only made a show of force and only did so for a limited time. They did not fire any shots. They did not breach the home. They did not arrest White. They did not physically restrain White. They did not touch White. According to White's petition, the defendants disbanded their perimeter as soon as she finished speaking with them and allowed her to reenter her home.

The defendants' show of force for a limited period of time outside the home in effecting an arrest of a potentially armed suspect for a serious crime, where the home was not breached, where no shots were fired, where the plaintiff was not the target of the conduct, where the plaintiff was not arrested, and where the plaintiff was not physically restrained or touched was not "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Fuller*, 567 N.W.2d at 423

(quoting *Harsha*, 346 N.W.2d at 801); *see, e.g., Ramirez v. City of San Jose*, No. 21–cv–08127–VKD, 2022 WL 3139521, at *10 (N.D. Cal. Aug. 5, 2022) (dismissing claim for intentional infliction of emotional distress and holding show-of-force public arrest was insufficient as matter of law); *Quinn v. Zerkle*, Nos. 2:21–cv–00421, 2:21–cv–00427, 2021 WL 6050656, at *8 (S.D. W. Va. Dec. 20, 2021) (dismissing claim of intentional infliction of emotional distress where officers surrounded plaintiff's home in search of another and breached home without warrant); *Ledford v. Rutledge*, No. 1:17–CV–438–TLS, 2018 WL 4216820, at *7 (N.D. Ind. Sept. 4, 2018) (concluding excessive show of force in effecting arrest did "not rise to the 'extreme and outrageous' level required for an intentional infliction of emotional distress claim"); *Pierre v. City of Miramar*, No. 12–CV–60682, 2012 WL 12895745, at *8 (S.D. Fla. Aug. 15, 2012), (dismissing claim of intentional infliction of emotional distress where police engaged in "overwhelming show of force," surrounded plaintiff's "home with their guns drawn," "ordered him out of his home," "shined a bright floodlight directly in his fac[e]," and "pointed guns at him from all directions"), *aff'd in part, vacated in part*, 537 F. App'x 821 (11th Cir. 2013) (per curiam).

We reverse the district court's ruling denying the defendants' motion to dismiss White's claim for intentional infliction of emotional distress.

## B.

We next address the district court's denial of the defendants' motion to dismiss White's trespass claim. The general rule in Iowa is that "[e]very unauthorized entry is a trespass, regardless of the degree of force used, even if

no damage is done, or the injury is slight . . . . It will be presumed that injury resulted even if it was no more than the trampling of herbage." *Iowa State Highway Comm'n v. Hipp*, 147 N.W.2d 195, 199 (Iowa 1966) (quoting 87 C.J.S. *Trespass* § 13b, at 965–66 (1954)). However, it is incumbent on the plaintiff to plead or prove the alleged trespasser was "not rightfully upon the property of another, but enter[ed] it without consent, either express or implied, of the owner or occupier." *Id.*

Even when the amended petition is viewed in the light most favorable to White, her trespass claim fails as a matter of law because the law enforcement officials had a legal right to enter White's property. This court resolved this issue in *State v. Van Rees*, 246 N.W.2d 339, 343 (Iowa 1976). In that case, the defendant departed the scene of a single-car accident, and several neighbors reported this to the sheriff's office. *Id.* at 341. A deputy went to the defendant's residence to investigate and walked into the defendant's yard where the defendant was speaking to another individual. *Id.* The defendant ordered the deputy off his property, which the deputy refused to do. *Id.* They got into a rancorous verbal dispute that escalated into a physical altercation that ultimately resulted in the deputy shooting the defendant "in the leg to avoid, according to him, serious physical assault." *Id.*

The defendant was charged with willfully resisting an officer, and he defended on the ground that the officer had trespassed on his property. *Id.* at 341, 343. We rejected the argument, stating, "We cannot agree that an officer is acting illegally when he entered upon a person's property to question him in

investigating a complaint that a crime has been committed. Ordinarily an officer of the law who goes upon private property under such circumstances is not a trespasser." *Id.* at 343. We concluded:

> In the present case, Deputy Smith had been directed to investigate the hit-and-run accident. Leaving the scene of an accident is a misdemeanor. Law officers, including deputy sheriffs, are obligated . . . to investigate crimes. **We hold Smith was entitled to enter defendant's premises to carry out this duty. For this limited purpose he was not a trespasser and did not require defendant's consent**.
>
> What we have said does not, of course, permit an officer to enter one's home or to conduct a search or make a seizure without a warrant or other authority.

*Id.* (emphasis added) (citations omitted).

Our decision in *Van Rees* is controlling here. *See id.*; *see also Lovig*, 675 N.W.2d at 565 (stating operating while intoxicated investigation can support entry into home where probable cause and exigent circumstances are present); *Long v. Lauffer*, No. 09–1916, 2011 WL 222530, at *9 (Iowa Ct. App. Jan. 20, 2011) ("When an officer has entered private property to investigate a complaint that a crime has been committed, the officer ordinarily has not committed a trespass.").

Further, our holding in *Van Rees* is consistent with the general rule in this country: there is a "privilege to enter property to effect an arrest or enforce the criminal law under certain circumstances." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2079 (2021); *see* 75 Am. Jur. 2d *Trespass* § 78, at 82 (2007) ("An officer of the law is privileged to make an entry to . . . arrest for a criminal offense."); Restatement (Second) of Torts § 204 cmt. *g*, at 383 (Am. L. Inst. 1965)

("[T]he fact that the actor in attempting or making an arrest uses excessive force . . . does not destroy his privilege to be upon the land for the purpose of effecting the arrest . . . ."); *see also State v. Dugan,* 555 P.2d 108, 110 n.1 (Ariz. 1976) (en banc) ("[W]hen the performance of his duty requires an officer of the law to enter upon private property, his conduct, otherwise a trespass, is justifiable.") (quoting *Giacona v. United States,* 257 F.2d 450, 456 (5th Cir. 1958)); *Heinze v. Murphy,* 24 A.2d 917, 922 (Md. 1942) ("It is not a trespass for an officer of the law to go upon another's premises in the line of his duty, although his conduct afterward may make it a trespass."); *Sterling v. City of Albany,* 545 P.2d 1386, 1389 (Or. Ct. App. 1976) (officer's entry into a business without consent to investigate crime was not trespass), *aff'd,* 555 P.2d 23 (Or. 1976) (en banc); *Storms v. State,* 590 P.2d 1321, 1323 (Wyo. 1979) ("If an officer goes upon private premises in the performance of a duty and is investigating a criminal complaint he is not a trespasser. . . . As a matter of fact it is the duty of a police officer to investigate possible violation of law." (citation omitted)).

We reverse the district court's ruling denying the defendants' motion to dismiss White's trespass claim.

## C.

Finally, we address White's common law assault claim. Civil assault requires proof of the following elements: "(1) an act intended to put another in fear of physical pain or injury; [or] (2) an act intended to put another in fear of physical contact which a reasonable person would deem insulting or offensive; and the victim reasonably believes that the act may be carried out immediately."

*Greenland v. Fairtron Corp.,* 500 N.W.2d 36, 38 n.4 (Iowa 1993) (alteration in original). "[A]cts threatening violence to the person of another, coupled with the means, ability, and intent to commit the violence threatened, constitute an assault." *Holdorf v. Holdorf,* 169 N.W. 737, 738 (Iowa 1918).

When the plaintiff's pleading is viewed in the light most favorable to her, she has sufficiently pleaded an assault. White alleges the defendants arrived at her home and engaged in a show of force disproportionate to the offense being investigated. She was present in the home and not a subject of the criminal investigation. When she exited her home on the defendants' command, she found many deputies and officers with their firearms trained on her. While the defendants' conduct was not beyond the bounds of all decency in a civilized society, it could put a person in fear of physical pain or injury. Indeed, our courts have held that confronting another with a shotgun is substantial evidence in support of a jury's verdict finding civil assault by a private person. *E.g.,* *Schneider v. Middleswart,* 457 N.W.2d 33, 34–35 (Iowa Ct. App. 1990).

The defendants contend they are nonetheless entitled to dismissal because their actions as peace officers were justified as a matter of law. *See, e.g.,* Iowa Code § 804.8(1). We disagree. This matter comes before the court at the motion to dismiss stage, which tests only the sufficiency of the plaintiff's petition. *Meade,* 974 N.W.2d at 774–75. A party is entitled to dismissal only when *the petition* shows the claim or claims are legally deficient and the party has no right of recovery under any state of facts. *Id.* Justification is an affirmative defense to assault that the defendants must plead and prove. *State v. Kuhse,* 937 N.W.2d

622, 627 (Iowa 2020) ("[J]ustification is an affirmative defense . . . ." (quoting *State v. Delay*, 320 N.W.2d 831, 833 (Iowa 1982))); *Wessman v. Sundholm*, 291 N.W. 137, 138–39 (Iowa 1940) (stating justification is an "affirmative defense" to assault and battery); *Hill v. Rogers*, 2 Iowa (Clarke) 67, 68 (1855) (treating justification as affirmative defense and fact question for jury); *Erickson v. Saks*, No. 08–0774, 2009 WL 143413, at *3 (Iowa Ct. App. Jan. 22, 2009) (stating justification is affirmative defense). This is an objective reasonableness standard. *Chelf v. Civ. Serv. Comm'n*, 515 N.W.2d 353, 355 (Iowa Ct. App. 1994).

It is true that "a plaintiff may plead himself out of court" with respect to an affirmative defense. *Benskin*, 952 N.W.2d at 299 ("A defendant may raise the statute of limitations by a motion to dismiss if it is obvious from the uncontroverted facts contained in the petition that the applicable statute of limitations bars the plaintiff's claim for relief." (quoting *Venckus v. City of Iowa City*, 930 N.W.2d 792, 809 (Iowa 2019))); *see also Mormann v. Iowa Workforce Dev.*, 913 N.W.2d 554, 575 (Iowa 2018) ("[A] plaintiff may plead himself out of court by alleging facts that provide the [defendant] with a bulletproof defense and foreclose application of equitable tolling," which is generally a fact-intensive inquiry.). But White has not done so here. *See Johnson v. Civ. Serv. Comm'n*, 352 N.W.2d 252, 257 (Iowa 1984) (stating a peace officer who used force can commit assault "if the peace officer does not reasonably believe the particular force was necessary in the circumstances"); *see also Sullivan v. Gagnier*, 225 F.3d 161, 165–66 (2d Cir. 2000) (per curiam) ("The force used by the officer must be

reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer.").

The defendants' affirmative defense should be raised at summary judgment or proved at trial. The district court did not err in denying the defendants' motion to dismiss White's assault claim.

V.

We affirm the district court's dismissal of White's state constitutional tort claims. We reverse the district court's denial of the defendants' motion to dismiss White's claims for intentional infliction of emotional distress and trespass. We affirm the district court's denial of the defendants' motion to dismiss White's claim for assault. We remand this matter for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Waterman, Mansfield, and Oxley, JJ., join this opinion. McDermott, J. files an opinion concurring in part and dissenting in part, in which Christensen, C.J., joins. May, J., takes no part.

**McDERMOTT, Justice (concurring in part and dissenting in part).**

Although I concur in the majority's dismissal of White's constitutional claims and in its decision not to dismiss White's common law assault claim, I respectfully dissent from its dismissal of her other two common law claims. The majority errs, in my view, in reversing the district court and dismissing her common law claims for intentional infliction of emotional distress and trespass.

Dismissing these claims at this stage of the proceedings is an extraordinary step. This case comes to us on appeal from a ruling on a motion to dismiss under Iowa Rule of Civil Procedure 1.421(1)(*f*). At the motion to dismiss stage, the plaintiff's petition must simply contain factual allegations that give the defendant "fair notice" of the claim so the defendant can adequately respond to the petition. *Schmidt v. Wilkinson*, 340 N.W.2d 282, 283 (Iowa 1983) (quoting *Gosha v. Woller*, 288 N.W.2d 329, 331 (Iowa 1980)). A petition meets the "fair notice" requirement if it informs the defendant of the events that give rise to the claim and of the claim's general nature. *Soike v. Evan Matthews & Co.*, 302 N.W.2d 841, 842 (Iowa 1981).

We take a dim view of an attempt to strike a claim through a motion to dismiss. And we haven't been subtle in articulating this point. "Generally, a motion to dismiss should not be granted." *Weizberg v. City of Des Moines*, 923 N.W.2d 200, 217 (Iowa 2018). "Nearly every case will survive a motion to dismiss under notice pleading." *U.S. Bank v. Barbour*, 770 N.W.2d 350, 353 (Iowa 2009). "A motion to dismiss is properly granted 'only when there exists no conceivable

set of facts entitling the non-moving party to relief.' " *Rees v. City of Shenandoah*, 682 N.W.2d 77, 79 (Iowa 2004) (quoting *Barkema v. Williams Pipeline Co.*, 666 N.W.2d 612, 614 (Iowa 2003)). We have drawn a bright line with motion to dismiss practice in our courts—one that has delivered clarity and predictability for the bench and bar alike. Today's opinion undermines that.

On White's claim for intentional infliction of emotional distress, the majority today grants the defendants' motion to dismiss because it concludes that the allegations fail to establish the conduct at issue was "outrageous." Yet more than thirty years ago in *M.H. v. State*, we analyzed the precise question of *when*—at what stage—courts should determine whether alleged conduct meets the "outrageous" threshold in an intentional infliction of emotional distress claim. 385 N.W.2d 533, 540 (Iowa 1986). We declared: "We have recognized the principle that it is for the court to determine in the first instance, as a matter of law, whether the conduct complained of may reasonably be regarded as outrageous. However, this determination will generally *not* take place on a *motion to dismiss*." *Id.* (emphasis added) (citations omitted).

The reason for this, as we explained, is simple:

> Under "notice pleading," all that is required is a short and plain statement of the claim for relief, with no requirement of pleading specific facts. In order to sustain a motion to dismiss for failure to state a claim for relief, we must conclude that no state of facts is conceivable under which plaintiffs might prove their right of recovery. . . . The issue whether such facts are present "is more appropriately resolved upon presentation of evidence through summary judgment . . . or by trial."

*Id.* (second omission in original) (citations omitted) (quoting *Van Meter v. Van Meter*, 328 N.W.2d 497, 498 (Iowa 1983) (en banc)). We thus held in *M.H.* that

"[t]he district court correctly determined that this"—a motion to dismiss—"was not the proper stage of the trial to make this decision." *Id.* Despite all the language quoted above, and despite our holding in the case affirming the denial of the motion to dismiss, the majority cites *M.H.* to suggest it somehow *supports* the decision to dismiss the intentional infliction of emotional distress claim in this case. Not at all.

Our holding in *M.H.* is not an outlier. In *Van Meter v. Van Meter*, for instance, we similarly rejected an attempt to toss an intentional infliction of emotional distress claim on a motion to dismiss. 328 N.W.2d at 498. We stated, "We cannot conclude as a matter of law that no facts are conceivable under which a claim for intentional infliction of emotional distress could be maintained . . . ." *Id.*; *see also Grimm v. U.S. W. Commc'ns, Inc.*, 644 N.W.2d 8, 17 (Iowa 2002) (reversing the grant of a motion to dismiss and noting that the plaintiff "could simply have alleged in general terms the elements of an intentional-infliction-of-emotional distress claim and survived [the] motion to dismiss"). I have been able to locate, and the majority cites, only one instance when we've ever affirmed a motion to dismiss an intentional infliction of emotional distress claim: *Van Baale v. City of Des Moines*, 550 N.W.2d 153, 156–57 (Iowa 1996), *abrogated on other grounds by Godfrey v. State*, 898 N.W.2d 844 (Iowa 2017), *overruled by Burnett v. Smith*, ___ N.W.2d ___ (Iowa 2023). *That* case is the outlier.

Every other Iowa case that the majority cites as supporting dismissal of the intentional infliction of emotional distress claim had in fact already progressed past the motion to dismiss stage to either the summary judgment or

trial stage. *See, e.g.*, *Lennette v. State*, 975 N.W.2d 380, 391–92 (Iowa 2022) (summary judgment); *Hedlund v. State*, 930 N.W.2d 707, 723–24 (Iowa 2019) (summary judgment); *Fuller v. Loc. Union No. 106 of the United Bhd. of Carpenters & Joiners*, 567 N.W.2d 419, 421, 423 (Iowa 1997) (summary judgment); *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 793–94, 801 (Iowa 1984) (trial). The majority cites a handful of federal cases, but as we've recognized repeatedly, the federal rules of civil procedure implement a different, heightened pleading standard that we've refused to adopt for pleadings under the Iowa Rules of Civil Procedure. *See Hawkeye Foodservice Distrib., Inc. v. Iowa Educators Corp.*, 812 N.W.2d 600, 608 (Iowa 2012) (declining "to depart from our well-established standard for reviewing a motion to dismiss" in favor of the federal approach).

Setting aside whether a motion to dismiss is the appropriate vehicle to dismiss this claim (and it isn't), I have a more fundamental disagreement with the majority's determination that there's no *conceivable* way (as our standard frames it) that the alleged conduct could establish an intentional infliction of emotional distress claim. When we take up a motion to dismiss, we assume that all the facts alleged in the plaintiff's petition are true. *McGill v. Fish*, 790 N.W.2d 113, 116 (Iowa 2010). This is because the only thing at issue is the plaintiff's "right of access to the district court, not the merits of his allegations." *Richards v. Iowa Dep't of Revenue & Fin.*, 454 N.W.2d 573, 574 (Iowa 1990). We view the plaintiff's petition "in the light most favorable to the plaintiff and resolve[] any doubts in the plaintiff's favor." *Young v. HealthPort Techs., Inc.*, 877 N.W.2d 124, 128 (Iowa 2016). Contrary to the indulgent view that we adopt when assessing

the adequacy of a plaintiff's allegations at the motion to dismiss stage, the majority seems to take the *least* generous view possible of her allegations.

From the petition, we assume as true that law enforcement officers stationed approximately ten vehicles outside White's home. The amassed officers—in an "overwhelming show of force," with handguns and rifles or shotguns in hand and at the ready, and assisted by a K-9 unit—established a perimeter around her home. No one came to her door. Rather, one of the officers, through a sound amplifier, identified himself and the others surrounding her home as police. He demanded that the occupants of the home immediately come to the front door, open it slowly with their hands empty and in the air, and step outside. White initially refused to leave her home, so the officer gave her a "lawful order" commanding that she do so. When she opened her front door and walked out onto the stoop, she saw the officers crouched behind vehicles, trees, and other objects, with their firearms trained on her. She slowly walked, as commanded, to one of the marked police cars stationed in her driveway, where an officer began questioning her. After this interview, and after the amassed officers eventually disbanded, she was allowed to return to her home.

I suspect that few Iowans have ever been commandeered out of their homes to face the possible life-altering—if not life-*end*ing—prospect of nearly a dozen armed officers hunkered and in position with firearms aimed at them. I further suspect, if it did happen, those standing on their stoops as the potential target of all that primed lethal force might legitimately claim that it caused "severe or extreme emotional distress." *Hedlund*, 930 N.W.2d at 723–24 (reciting

the elements of an intentional infliction of emotional distress claim). These events, if true (as we must assume), strike me as more than sufficient—and certainly "conceivable"—to get past a motion to dismiss.

The majority's suggestion that the defendants' actions can't be considered "outrageous" because the ordeal lasted a limited period of time, or that no shots were ultimately fired at her, or that no one physically touched her, fall far short of conclusively negating any right to relief. Even if one were to find the majority's counterpoints individually or collectively persuasive, the motion to dismiss stage isn't designed to weigh competing facts like this. "If a claim is 'at all debatable,' we have advised against the filing or sustaining of a motion to dismiss." *Weizberg*, 923 N.W.2d at 217 (quoting *Renander v. Inc., Ltd.*, 500 N.W.2d 39, 41 (Iowa 1993)). White's petition offers no conceivable set of facts to support her claim for intentional infliction of emotional distress? Her claim isn't even at all *debatable*? I can't get on board.

The majority's dismissal of White's separate trespass claim suffers from similar defects. Neither the majority opinion nor the defendants' brief cites any case in which our court has affirmed the grant of a motion to dismiss a common law trespass claim. The principal Iowa case that the majority relies on, *State v. Van Rees*, 246 N.W.2d 339 (Iowa 1976), is a criminal case involving a misdemeanor resisting-arrest conviction, not a *civil* trespass case. The trespass issue in *Van Rees* only came up because the defendant argued in part that he was entitled to resist the officer because the officer was a trespasser on his property. *Id.* at 343.

In this case, any claim that the police were lawfully present on White's property would be pleaded as an affirmative defense—namely, "justification"—to White's trespass claim. And with affirmative defenses at the motion to dismiss stage, we've said: "A motion to dismiss assumes the truth of facts well pleaded in the pleading attacked but is not a proper vehicle for the submission of affirmative defenses." *Harrison v. Allied Mut. Cas. Co.*, 113 N.W.2d 701, 702 (Iowa 1962). This makes sense because an affirmative defense doesn't appear in a plaintiff's petition (which, again, is our focus in a motion to dismiss).[2]

The *defendant* typically bears the burden to plead and prove an affirmative defense. Iowa R. Civ. P. 1.419; 71 C.J.S. *Pleading* § 741, at 750–51 (2022). "When a party invokes an affirmative defense to avoid liability, *that* party should be forthcoming about why the defense applies rather than expecting the opposing party to seek out evidence to rebut that affirmative defense." *Breese v. City of Burlington*, 945 N.W.2d 12, 23 (Iowa 2020) (emphasis added). Our own appellate rules say that the principle in play here—that "[o]rdinarily, the burden of proof on an issue is upon the party who would suffer loss if the issue were not established"—is "so well established that authorities need not be cited in support of" it. Iowa R. App. P. 6.904(3)(*e*).

It's not for us to plead, prove, and weigh a defendant's potential affirmative defense of justification in a preanswer motion to dismiss. Indeed, when the

---

[2]We have considered statute of limitations defenses presented in a motion to dismiss, but we only do so "when the necessary facts appear on the face of the pleadings." *Neylan v. Moser*, 400 N.W.2d 538, 541 (Iowa 1987) ("[O]therwise by affirmative defense and motion for summary judgment.").

defendants filed their motion to dismiss, none had yet pleaded any affirmative defenses (justification or otherwise) in the case. Today's holding in effect imposes a new requirement that parties asserting common law claims must draft their petitions to preemptively plead around a speculative justification defense that a defendant may later assert. That would be a significant change in our law.

And even if we were to consider and evaluate hypothetical affirmative defenses at the motion-to-dismiss stage, we should still refuse to dismiss the trespass claim here. Suffice it to say, this case doesn't present what we might consider run-of-the-mill police investigative activity. It involved a large assemblage of officers (with approximately ten police cars) crouched and ready with guns drawn and aimed at White, who had been commanded to slowly leave her home. The parties should have an opportunity to present their evidence for a full and fair resolution of the trespass claim's viability and any affirmative defenses that the defendants might choose to plead.

Of course, we already have a well-developed procedural device that allows for the speedy disposition of claims without the need for a trial when a plaintiff is unable to provide sufficient evidence to support a claim: summary judgment. Iowa R. Civ. P. 1.981. There are, as we've repeatedly recognized, important differences between motions to dismiss and motions for summary judgment, and thus good reasons for the different analytical standards that we've applied to them throughout our court's history. *E.g.*, *Rees*, 682 N.W.2d at 79; *Cutler v. Klass*, 473 N.W.2d 178, 181 (Iowa 1991).

With today's holding, the majority at best blurs, and at worst erases, clear procedural standards that have long provided simple, predictable application to judges and litigants. I believe that the district court correctly applied our motion to dismiss standards in this case, and I thus respectfully dissent from the majority's reversal of the district court's ruling and dismissal of White's intentional infliction of emotional distress and trespass claims.

Christensen, C.J., joins this concurrence in part and dissent in part.